IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CONSOLIDATED |
| v. | ) Civ. No. 05-013-GMS |
| | ) Civ. No. 05-051-GMS |
| WARDEN RAFAEL WILLIAMS, | ) Civ. No. 05-052-GMS |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff Jimmie Lewis ("Lewis"), SBI #506622, a prisoner incarcerated at Delaware Correctional Center, Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

**I.    THE COMPLAINT**

  **A.    The Amendments**

The plaintiff brings this consolidated action against a legion of defendants, raising a number of claims[1]. On April 8, 2005, an amended complaint was filed pursuant to Fed. R. Civ. P. 15(a), adding new allegations. (D.I. 8.) Thereafter, Lewis sought, and was granted, leave to amend the complaint adding new defendants. (D.I. 17.) A second motion to amend was filed on November 10, 2005. (D.I. 18.) The amended complaint adds even more defendants and also contains additional allegations.

---

[1]The court consolidated case Nos. 05-13-GMS, 05-51-GMS and 05-52-GMS on December 20, 2005. (D.I. 22.)

"After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). Inasmuch as the complaint has yet to be screened, the court will grant Lewis' motion to amend the complaint. (D.I. 18.) The newly named defendants are Lise Merson, Dr. Rogers, Donald Napolin, Capt. Berggrun, Nurse Jeromy, April Lyonns and Dr. Arumburo.

### B. The Allegations

Lewis seeks injunctive relief to obtain medical treatment and a transfer to North Carolina. He also seeks compensatory and punitive damages. Lewis makes many complaints, alleging a panoply of constitutional violations. He also alleges that the defendants conspired to violate his constitutional rights. The majority of Lewis' complaints center around his custody with the Delaware Department of Correction ("DDOC") and his placement at the Howard R. Young Correctional Institution ("HRYCI"), particularly when housed in the infirmary's psychiatric closed observation rooms. **The court will address the claims raised in the complaint, the amended complaint, and the second amended complaint.** In most instances each successive filing contains the same allegations, albeit the newer filings are more descriptive.

Lewis makes allegations regarding his conditions of confinement, medical treatment and care, and access to the courts. Lewis takes exception to the way inmates are classified. He contends that he was subjected to excessive force and that correction officials failed to protect him. He challenges his conviction and confinement. He also alleges a violation of his right to privacy. Further, he contends that an officer slandered him and that other correction officers used

harsh or threatening words when speaking to him. Lewis alleges violations of his right to due process in the filing, investigation, and resolution of grievances, and in the procedures used in conducting disciplinary proceedings. Lewis complains that while housed in maximum security he was deprived of certain activities and rights. Finally, he alleges that virtually all correction officials in a supervisory position failed to properly train, supervise, and/or control their subordinates.

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis*, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)(citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. ANALYSIS

### A. Pleading Deficiency

Other than naming them as defendants, Lewis provides no details regarding the alleged actions of defendants Betty Burris, Evelyn Steven, and Collen Bell. Additionally, the complaint alleges that Lewis was assaulted by fellow inmates due to the negligence of Pod Officers, but Lewis fails to provide the names of these officers. (D.I. 8, para. 15.) Finally, Lewis names as defendants, First Correctional Medical ("FCM") Staff and Internal Affairs Supervisor but provides no specific names.

There is no heightened pleading requirement when filing civil rights complaints. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004)(citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). The plaintiff's complaint, however, "lack[s] enough detail to. . .serv[e] its function as a guide to discovery." *Alston v. Parker*, 363 F.3d at 253 (internal citations omitted). As currently presented, the claims against Betty Burris, Evelyn Steven, Collen Bell, the unnamed Pod Officers, the FCM Staff, and the Internal Affairs Supervisor have no arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. at 325. As such, the claims are frivolous and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Failure to State a Claim

Lewis raises a number of claims against defendant Warden Rafael Williams ("Warden Williams") which do not sufficiently allege a deprivation of a right secured by the constitution. They are: **a)** use of an intercom system that causes Lewis' ears to ring (D.I. 8, para. 37); **b)** transfer of Lewis to the DDOC without obtaining a court order; **c)** allowing Michael Knight

("Knight") to serve Lewis pork products without providing a pork substitute and to serve juice containing saccharin (D.I. 8, para. 40, 41); **d)** for allowing persons who are not "medically clear" to serve food (D.I. 8, para. 42); and, **e)** providing Lewis an inadequate inmate handbook (D.I. 8, para. 43). Lewis also brings a claim against Knight for serving pork products without providing a pork substitute.

In order to state a claim under § 1983, Lewis must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C. § 1983; *See Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996).

None of the foregoing claims rise to the level of a constitutional violation. The claims are frivolous and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C.  Access to Courts

Lewis alleges he was denied access to a paralegal to assist him in the filing of an application to the Supreme Court, and that while housed in segregation he was prohibited from receiving or sending legal mail. (D.I. 18, para. 5.) He also alleges that FCM denied him permission to telephone his attorney. Lewis alleges that this deprivation caused him a "legal dilemma" concerning his Superior Court Case.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). In order to state a claim that he was denied his right of access to the courts, Lewis must show that he was actually injured by such interference. *Lewis v. Casey,*

518 U.S. 343, 349 (1996); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).

Lewis alleges that defendants C/O Talenti ("Talenti"), Capt. Emig ("Emig"), Donald Napolin ("Napolin"), Mr. Fish ("Fish"), Department of Correction Commissioner Stanley Taylor "Commissioner Taylor"), Warden Williams, Georgia Sutton ("Sutton"), Dr. Boston ("Dr. Boston"), and FCM all had involvement in the denial of his access to the courts. The allegations in the complaint, however, indicate that rather than deny access to the courts, defendants Talenti, Emig and Napolin actually assisted Lewis in his requests for legal access. Therefore, the access to the court claim raised against them is dismissed. The court recognizes the existence of a cognizable denial of access to the court claim against defendants Fish, Commissioner Taylor, Warden Williams, Sutton, FCM and Dr. Boston.

### D. Respondeat Superior

Lewis alleges that while he was housed in administrative segregation Commissioner Taylor and Warden Williams denied him religious services and counseling, visits, telephone calls to attorney or family, receipt of literature, outdoor recreation, haircuts, law library access, clean uniforms, warm clothing, proper grievance procedure, hygiene products, cleaning supplies, and meals served in a sanitary manner. (D.I. 8, para. 19.)

He also makes general allegations of denial of access to the commissary, complains of the procedure used for cell extractions, complains that persons who are not medically trained serve food and that he is subjected to acts of reprisals by these individuals. (D.I. 2.) Lewis raises additional claims regarding the grievance system, telephone rights, mailing rights, outdoor recreation, and the intercom system, specifically alleging that Warden Williams does not provide a mailing system to assure the proper handling of inmate mail. (D.I. 8, para. 45.)

Lewis seeks to hold Commissioner Taylor and Warden Williams liable on the basis of their supervisory positions. Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

There is nothing in the complaint to indicate that either Commissioner Taylor or Warden Williams were the "driving force [behind]" the foregoing list of alleged violations. Additionally, the complaint does not indicate that these defendants were aware of the plaintiff's allegations and remained "deliberately indifferent" to his plight. *Sample v. Diecks*, 885 F.2d at 1118. Thus, these claims against Commissioner Taylor and Warden Williams are dismissed inasmuch as they have no arguable basis in law or in fact.

E.  **Conspiracy**

Lewis makes a vague allegation that the defendants conspired to deprive him of his rights. For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor,* 69 F.Supp.2d 649, 665-66 (M.D.Pa.), *aff'd,* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir. 1999)). *See also Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir. 1993) (plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of

law); *Kelley v. Myler,* 149 F.3d 641, 648-49 (7th Cir. 1998) (an agreement or an understanding to deprive the plaintiff of constitutional rights must exist).

The complaint does not contain sufficient allegations that indicate how the defendants acted in concert to deprive Lewis of his constitutional rights. Therefore, the conspiracy claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**F.     Verbal Abuse**

Lewis alleges that in October 2003 when he was taken to the infirmary, Lt. Chudzik and Corporal Chapel shouted offensive, obscene remarks at him. (D.I. 8 para. 13.) He also alleges that in May 2004 Nurse Kimberly Johnson and Lt. S. Farmer ("Farmer") both shouted slanderous remarks at him and both pointed capstun spray at him. (D.I. 18, para. 23.) He does not allege that he actually was sprayed. During the May 2004 incident, Farmer was accompanied by Lt. Patrick Sheets and Lt. Joseph Sabato. Later Lt. Sabato and Officer D. Carlock investigated the situation. Lewis alleges that at a later time Farmer threatened him that he would be beaten upon his transfer to Administrative Segregation. Finally, Lewis alleges that he was a victim of slander and libel when Lt. Patrick Sheets spread vicious rumors about him. (D.I. 18, para. 22.) Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, and Emig regarding the foregoing, they failed to act or respond, and that he filed a grievance, to no avail.

Verbal harassment does not rise to the level of a constitutional violation. *See Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D.Pa. 1993); *see also McBride v. Deer,* 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate

inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy,* 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

Additionally, Lewis' claims of slander and libel against Sheets are not cognizable under § 1983. Tort claims such as defamation of character are not properly included in a civil rights action under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 332 (1986) (quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976)) ("We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *See also Hernandez v. Hunt,* Civ.A. No. 89-4448, 1989 WL 66634 (E.D.Pa. Jun 16, 1989).

Lewis' claims of verbal abuse, verbal harassmsent, slander and libel are not cognizable under § 1983. Therefore, they are dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

G.  **Conviction/Sentence**

Lewis alleges that on October 6, 2003, the actions of Warden Williams and the policies of FCM denied him a fair trial. (D.I. 2.) Lewis alleges this occurred when for security reasons, Warden Williams would not transfer Lewis' civilian clothing to the court where Lewis' trial was taking place. Lewis alleges this deprived him of a full and fair opportunity to present himself in front of a jury.

Lewis also alleges that the actions of Farmer caused him to be placed in Administrative Segregation and then transferred to the Delaware Psychiatric Center. He alleges that Farmer instructed that his records indicate he was transferred after assaulting a corrections officer, and

that Lt. Philip Parker ("Parker") documented same. Lewis alleges that this conduct caused an atypical and significant hardship because the erroneous information contained in the psychiatric evaluation was used for his competency determination. Lewis also alleges that this erroneous information was used by the Superior Court Judge to sentence him to the maximum term, and he was denied immediate release.

In essence Lewis challenges his conviction and confinement and seeks damages for alleged harm caused by Warden Williams, FCM, Farmer, and Parker as it relates to his conviction and sentence. Such a claim is not cognizable under § 1983 unless and until the conviction is invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87, 489 (1994). Indeed, to the extent that Lewis attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973).

Lewis has not alleged that his conviction or sentence was reversed or invalidated as required by *Heck*. To the extent Lewis seeks damages for his conviction and sentence, his claim rests on an "inarguable legal conclusion," is frivolous, and is dismissed.

### H.   Privacy

Lewis alleges that Debra Muskarelli ("Muskarelli") used the intercom system to eavesdrop and/or spy on him during his pretrial confinement at the mental health pod. (D.I. 18, para. 8.) He alleges that the spying caused him to become paranoid, delusional and psychotic. Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, and Dr. Boston regarding Muskarelli's actions but that they failed to act or respond. Also, he filed a grievance, to no avail. Lewis also alleges that Warden Williams and C/O Harriford utilized the intercom

system to spy on him. (D.I. 8, paras. 25, 32.)

"A right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527 (1984). Hence, "prisoners retain no legitimate expectation of privacy in their cells for fourth amendment purposes." *Jones/Seymour v. LeFebvre,* 781 F.Supp. 355, 357 (E.D.Pa. 1991), *aff'd,* 961 F.2d 1567 (3d Cir. 1992) (TABLE) ; *Proudfoot v. Williams,* 803 F.Supp. 1048, 1051 (E.D.Pa. 1992); *Csizmadia v. Fauver,* 746 F.Supp. 483, 490 (D.N.J. 1990). Lewis makes no allegations that the defendants' alleged actions involved listening in or spying upon constitutionally protected conversations. He simply claims that they were eavesdroppers and spies. The claim is frivolous and is dismissed as such pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### I. Grievances

Lewis makes several allegations relative to grievances he filed. He alleges that defendant Napolin did not process his grievances and refused to acknowledge them. (D.I. 18, para. 30.) Lewis alleges that he wrote to Commissioner Taylor and Dr. Boston about the actions of Napolin, but they failed to act or respond. As with other claims, Lewis filed a grievance, to no avail.

Lewis further alleges that Sgt. Marg Moody ("Moody"), denied him the right to have his grievances properly addressed by sabotaging, hindering or denying grievances he filed. (D.I. 18, para. 38, 51.) Lewis alleges that Cpl. Lise M. Merson ("Merson"), the DCC inmate grievance chairperson, deliberately denied him the right to address his non-medical grievances in accordance with the grievance process. (D.I. 8, para. 39.)

Finally, Lewis alleges that he filed a grievance against Sgt. Fred Way ("Way") for failing to investigate threats Lewis received from an inmate. (D.I. 18, para. 24.) He contends that Way's failure to act caused him atypical and significant hardship of "psychotic and paranoid delusions" and being confined to the closed observation room. Lewis alleges that he wrote to Commissioner Taylor, Warden Williams, Dave Williams ("D. Williams"), and Emig but they failed to act or respond. He also filed a grievance, to no avail.

Prisoners possess the constitutional right of meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, "the right is not compromised by the failure of prison officials to address these grievances." *Booth v. King*, 346 F.Supp.2d 751,761 (E.D.Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, No. 04-4713, 138 Fed.Appx. 414, 415 (3d Cir. 2005). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. *Hoover v. Watson*, 886 F.Supp. 410, 418-419 (D.Del.), *aff'd,* 74 F.3d 1226 (3d Cir. 1995). Similarly, the failure to investigate a grievance does not raise a constitutional issue. *Brown v. Department of Correction*, No. Civ.A. 05-343-SLR, 2005 WL 344065, at *3 (D.Del. Dec. 15, 2005) (citing *Hurley v. Blevins*, No. Civ.A. 6:04CV368, 2005 WL 997317 (E.D.Tex. March 28, 2005)).

Lewis cannot maintain a constitutional claim based solely upon his perception that his grievances were not properly processed or investigated. The claims are frivolous and therefore are dismissed.

### J.     Failure to Protect

Lewis alleges that Warden Williams failed to classify inmates in a manner that would not present an immediate danger to his safety. (D.I. 8, para. 34.) Lewis also alleges that Warden Williams failed to install gates to protect him from physical attacks from inmates who have a different classification status. (D.I. 8, paras. 35, 36.) Finally, he alleges that Warden Williams does not use video cameras during cell extractions, and this policy has subjected Lewis to numerous physical attacks by correction officers. (D.I. 8, para. 38.)

Prison officials have a duty to take reasonable measures to protect prisoners from attacks by other inmates. *Farmer v. Brennan,* 511 U.S. 825 (1994). In order to state a claim against a prison official for failure to protect, the plaintiff must establish (1) "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) that the prison official was "deliberately indifferent" to the inmate's health or safety. *Id.* at 834. The prison official cannot be found liable "unless the official knows of and disregards an excessive risk to inmate health or safety". *Id.* at 837. He must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The complaint does not allege that Warden Williams was aware or should have been on notice that Lewis was substantially at risk from attack by other inmates. Therefore, Lewis has failed to state a claim against Warden Williams for failure to protect, and the claim is dismissed.

### K.     Due Process

Lewis alleges that his placement in maximum security deprived him of the right to obtain work credits and/or work release status. The court construes this as an attempt to raise a due process claim under Fourteenth Amendment. "As long as the conditions or the degree of

confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms,* 459 U.S. 460, 468 (1983) (citing *Montanye v. Haymes,* 427 U.S. 236, 242, 96 (1976)). Hence, transfer of a prisoner from one institution to another or from one classification to another is unprotected by "the Due Process Clause in and of itself," even though the change in status involves a significant modification in conditions of confinement. *Hewitt,* 459 U.S. at 468; *Moody v. Daggett,* 429 U.S. 78 (1976); *also see Lott v. Arroyo,* 785 F.Supp. 508, 509 (E.D.Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in a work release program); *Brown v. Cunningham,* 730 F.Supp. 612 (D.Del. 1990) (plaintiff's transfer from the general population to administrative segregation, without being given notice and the opportunity to challenge the transfer, was not a violation of plaintiff's liberty interest).

Despite Lewis' allegations that confinement in maximum security involves a change in the condition of confinement, he has no constitutionally protected right to participate in work programs while housed in maximum security. Thus, Lewis fails to state a due process claim. The claim, therefore, is dismissed.

**L.   Witnesses**

Lewis alleges that Corporal Currington served him with a disciplinary report dated February 17, 2005, and approved by Farmer. (D.I. 8, para. 57.) Lewis alleges his right to due process was violated because his witnesses were transferred to another facility and he was not able to properly defend himself. The complaint does not state who allegedly violated Lewis' right to due process.

14

While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). The requirements of due process in prison disciplinary hearings are that an inmate is entitled to (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-71.

As mentioned above, Lewis does not state who allegedly violated his constitutional rights. Accordingly, the claim is dismissed as frivolous.

### M.  Eleventh Amendment

Throughout his complaint, Lewis alleges that HRYCI violated his constitutional rights. He also alleges that Internal Affairs failed to supervise and/or control DDOC correction officers after being notified on several occasions that Lewis' constitutional rights were being violated. (D.I. 8, para. 55.)

HRYCI is an agency of the State of Delaware. Internal Affairs, as a division of the Delaware Department of Correction, is also an agency of the State of Delaware. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris* v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v.*

*Pugh*, 438 U.S. 781 (1978)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Ospina v. Department of Correction*, 749 F.Supp. 572, 579 (D.Del. 1991). Hence, as an agency of the State of Delaware, the Department of Corrections is entitled to immunity under the Eleventh Amendment. *See e.g. Evans v. Ford*, C.A. No. 03-868-KAJ, 2004 WL 2009362, *4 (D.Del. Aug. 25, 2004) (claim against DOC is dismissed on the basis of Eleventh Amendment immunity).

Lewis' claims against HRYCI and Internal Affairs have no arguable bases in law or in fact inasmuch as they are immune from suit. Therefore, the claims are frivolous and are dismissed pursuant to 28 U.S.C. § 1915A(b).

## IV.  CONCLUSION

For the above stated reasons, the court finds that certain claims raised by Lewis are factually and legally frivolous making their dismissal appropriate while other claims raised by Lewis are cognizable. An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

March 6, 2006
Wilmington, Delaware